## MILLER v. MILLER.

Circuit Court, Lake County.
February 6, 1950.

T. C. Cork, Clermont, for plaintiff.

R. P. Hamlin, Tavares, for defendant.

T. G. FUTCH, Circuit Judge

The plaintiff, Joseph F. Miller, by this action against his wife, Mattie C. Miller, seeks divorce from her on the ground of desertion as defined by the statutes of Florida.

Plaintiff, at the time of their marriage in 1908, and until his retirement in 1946, was a marine engineer, following his profession mainly on the Great Lakes, but at times on salt water. The couple made their home in Buffalo, New York, until 1947, when they came to Florida, locating in the city of Clermont in Lake County, where they had purchased a home the previous summer.

During all these years, Mrs. Miller had full responsibility of the home and the rearing of two children who reached maturity, and one child who died at the age of ten. She further had the responsibility of managing the financial affairs of the family, and she seems to have done an excellent job in this respect. At the time they came to Florida in 1947, they owned a home in Buffalo, New York, together with an apartment house, a lake front summer cottage in Canada on Lake Erie, the home and several vacant lots in Clermont, a fair bank balance in each of two banks, and a modest amount in stocks and bonds.

Title to the apartment house in Buffalo is held in the name of Mrs. Miller, the home in Kenmore, a suburb of Buffalo, is held in their joint names, as is also the home in Clermont and the vacant lots. The bank accounts had been carried in their joint names during all the years, and until after the date of the alleged desertion.

Soon after his retirement, Mr. Miller suffered a severe heart attack, from which he has never fully recovered, and Mrs. Miller also suffers from a heart ailment.

Mr. Miller was away from home the greater portion of the time so long as he followed his profession, but the record shows that throughout the many years of their married life, they have indulged in periodic quarrels and altercations. Their

daughter, Mrs. Marjorie Parker, seems to sum the matter up in a nut shell when she said, "well, they didn't argue continuously, but when they had a difference, they really had one." On or about April 12, 1948 one of these periodic rows came about, during which it is claimed that Mr. Miller became very violent. Mrs. Parker said she had to restrain him to keep him from inflicting serious injury on her mother, though he denies it. However, no one denies that the altercation was bitter. From the evidence, it does not seem that Mr. Miller was justified in raising the rumpus, the cause being as he says, that he overheard one of the neighbors ask his wife when she was going to New York. The answer was that she had not fixed a date. Mr. Miller then inquired of his wife if she were going to New York and she told him that had been her plan, as he had understood all along—that she did not intend to spend the summers in Florida. This brought on the difficulty, following which Mrs. Miller hastily packed her baggage and went to a friend's house where she spent the night, leaving for Buffalo the next day. As she was leaving, Mr. Miller told her if she left then, he would divorce her if it was the last thing he ever did. He made no effort towards reconciliation and does not appear to have communicated with her except through his daughter, when he requested that she sign a deed so he could sell one of the vacant lots in Clermont. She refused to do this unless he paid her half of the sale price.

The record shows that before the year was up, Mr. Miller had placed the matter in the hands of his attorney for the purpose of bringing suit for divorce.

All in all, the record indicates to me that Mrs. Miller's absence from Clermont was entirely to the liking of Mr. Miller and that he had no desire for her to return.

During the summer of 1948, Mrs. Miller sold the lake front cottage in Canada, which had been placed in her name while Mr. Miller was desperately ill, to avoid probate complications in the event of his death.

Practically the entire history of the married life of this couple has been recited by them in their testimony. The dollar sign shows up frequently and predominates throughout the testimony of each of them, to the exclusion of any reference whatsoever to any church or religious activity. It appears to this court that the whole trouble between the parties is one

of money and property. From the evidence, it appears that they each have about the same income and that they hold about the same amount of property. Mrs. Miller has a few bonds, some money, and title to an apartment house in Buffalo. She is joint owner with Mr. Miller, of the Kenmore home in New York, the home in Clermont, and the vacant lots in Clermont. Mr. Miller does not own any real estate in his own name, other than that held jointly with Mrs. Miller. He has a modest amount of money on deposit in two banks and a modest amount of stocks and bonds, from which the income cannot be very large.

I cannot hold that Mr. Miller has established desertion on the part of Mrs. Miller, as required by the statutes of Florida, and for that reason, the bill of complaint will be dismissed.

It appears to the court that Mrs. Miller has about the same income as Mr. Miller, and approximately the same amount of property in value. I cannot conclude that she is entitled to any decree for separate maintenance. However, the plaintiff, Mr. Miller, precipitated this law suit and it is only proper that he pay the expenses of it. Mrs. Miller has paid her attorney, Mr. R. P. Hamlin, a retainer fee of $150. Mr. Hamlin is entitled to additional compensation for his services in this matter, and I think the fair value of his services is $500. Accordingly the counterclaim of the defendant, Mrs. Miller, will be dismissed except insofar as relates to the attorney's fee, and Mr. Miller will be required to reimburse Mrs. Miller with $150 which she has heretofore paid Mr. Hamlin, and to pay to Mr. Hamlin an additional $350 for his services in this cause.

It is ordered, adjudged and decreed that the bill of complaint in this cause be dismissed at the cost of the plaintiff, and that the counterclaim of the defendant, except insofar as it relates to attorney's fee for her solicitor, be and the same is hereby dismissed, and the plaintiff Joseph F. Miller shall pay to the defendant Mattie C. Miller the sum of $150 to reimburse her for the money heretofore paid by her to her attorney, and he will also pay to Mr. R. P. Hamlin, the further sum of $350 as the balance due to compensate him for his services in this cause.